IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Ray Edward Wells, #133275,            ) | Civil Action No. 8:07-600-CMC-BHH |
|                 Plaintiff,     ) | |
| vs.                                                  ) | **REPORT AND RECOMMENDATION** |
|                     ) | **OF MAGISTRATE JUDGE** |
| Dr. Sampson, MD, MCI, SCDC;    ) | |
| Doris Jacques, RN, HCA, MCI,    ) | |
| SCDC; Raymond Reed, Jr., Warden, ) | |
| MCI, SCDC,                                    ) | |
|          Defendants.    ) | |
| _____) | |

The plaintiff, a state prisoner, is proceeding in this action *pro se*. He is seeking relief pursuant to Title 42, United States Code, Section 1983, the United States Constitution, and possibly various state-law claims. This matter is before the Court on the defendants' motion for summary judgment [Doc. 10].

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

## LAW AND ANALYSIS

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574

F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### SUMMARY JUDGMENT STANDARD OF REVIEW

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. *See* Fed. R. Civ. P. 56©. The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment

motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

The plaintiff claims that the defendants failed to treat him for the "burning, stabbing, at times numbness and tingling sensations" in his back. (Compl. at 2.) The plaintiff contends that his back problems are related to three injuries sustained while the plaintiff has been incarcerated.[1] *Id*. at 3. The plaintiff specifically contends that he was refused treatment on August 24, 28; October 8, 13, 18; November 3, 8, 13, 17, 20, 21-26; and December 3, 2006.[2] *Id*. at 3; (Pl. Aff. ¶ 3.). The plaintiff also claims that he should have been referred to various specialists. Finally, the plaintiff argues that at least part of the defendants' response to his condition was ineffectual because the medications prescribed by Defendant Sampson made him sick to his stomach and otherwise did not work. *Id*. at 2. The defendants move for summary judgment on the basis that no genuine issues of fact

---

[1] The defendants believe that the injuries predate his incarceration. (Def. Mem. Supp. Summ. J. Sampson Aff. ¶ 10.)

[2] As evidence, the plaintiff has only submitted his own affidavit in response to the defendants' motion for summary judgment. He does, however, claim that "Request to Staff Member Forms" were originally attached to his state court complaint and asks the Court to consider those. Based on the plaintiff's representations, those forms evidence his efforts to secure medical treatment on the dates identified. Because it does not appear that those documents were filed with the notice of removal, the Court requested that the defendants supplement that notice by filing whatever other documents had been originally attached to the state court complaint, if any. [Doc. 28.] For reasons more fully discussed *infra*, it is unnecessary for the Court to review those forms. Even assuming that the plaintiff was able to produce a medical request form for every day he was allegedly denied treatment, it would not alter the Court's decision insofar as it is abundantly clear that the plaintiff received significant and frequent medical attention throughout the period of time in which he claims he was denied it. The request forms would not have the effect, even if true and accurate, of altering that conclusion. The Court, however, would still request that the defendants supplement their notice of removal in accordance with this Court's order, as necessary.

3

exist as to the plaintiff's claim for deliberate indifference to his medical needs.

The Eighth and Fourteenth Amendments require the government "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

Deliberate indifference is a very high standard. In *Miltier v. Beorn,* 896 F.2d 848 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id*. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *See Estelle*, 429 U.S. at 104; *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g., Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) ("The affidavits submitted to the District Court reflect that Russell was under constant medical supervision from the time of his arrival at Botetourt. Questions of medical judgment are not subject to judicial review.").

The defendants have produced medical records demonstrating that the plaintiff was seen by MCI medical staff on August 11, 21, 23, 26; September 1, 8, 10, 19, 22, 25, 28; October 10, 12, 16, 17, 30, 31; November 2, 7, 13, 15, 17, 20, 21, 24; December 4, 5, 6, 11-13, 15, 17, 18, 2006; and January 5, 11, 2007. Defendant Dr. Sampson personally examined the plaintiff on August 21, September 25, November 13, and December 11, 2006. (Sampson Aff. ¶ 12.) Not only was the plaintiff given substantial medical attention for over 5 months, but typically he received such treatment on, or very near in time to, the days, in which, he claims to have been denied such attention.

Moreover, based on these some 36 encounters, the plaintiff received the following specific treatment. First, he was diagnosed with chronic back pain, attributable to probable arthritis and narrowing at the LS-S1 disc space. *Id*. ¶¶ 23, 26. As a result, the plaintiff was prescribed various medications and muscle relaxers, including Robaxin, Nortriptyline, Disalcid (a non-steroidal anti-inflammatory drugs), aspirin, and blood pressure medication.

*Id*. ¶¶ 21, 23, 27, 33, 36, 40. The plaintiff was referred multiple times to orthopedic and neurological specialists for examination. *Id*. ¶¶ 16, 25-28, 37. Based on the recommendations of these specialists, the defendant underwent an EEG and an MRI, both of which showed normal results. *Id*. ¶¶ 40-43. In addition to the prescribed medications, the defendants gave the plaintiff daily exercises and scheduled for him a physical therapy regimen. *Id*. ¶¶ 27-28.

Notwithstanding the substantial medical attention provided the plaintiff, there is evidence that the plaintiff was non-compliant with both the physical therapy regimen and medication. *Id*. ¶¶ 18, 32, 35, 39. He admitted to not taking the prescribed medications or performing his daily exercises. *See id*. In addition, Defendant Sampson found him to be unreceptive to medical advice, easily annoyed, irritated, and displayed a demanding attitude. *Id*. ¶ 18.

The plaintiff responds that he stopped taking his medications because they made him sick. Defendant Sampson, however, has sworn that for most of the treatment period the plaintiff never reported to him that he was experiencing any side effects from the Robaxin, Nortriptyline, or Disalcid or that he had stomach pains. *Id*. ¶¶ 34 ,39. On December 11, 2006, the plaintiff stated that he had stopped taking the aspirin and blood pressure medications because they were causing him stomach discomfort. *Id*. ¶¶ 39. Defendant Sampson instructed him to stop taking the aspirin. *Id*. There is no evidence or allegation that the plaintiff again complained to the defendants that the medications were making him sick or that he ever complained at all in regards to the prescribed pain and anti-inflammatory medications. The defendants cannot be deliberately indifferent as to

6

problems of which they are unaware.

Frankly, the Court is unsure of exactly what the plaintiff expected from the defendants. Clearly he is in pain and, for that, the Court is sympathetic. But, his complaint and response to summary judgment do not specify any actions, procedures, or medications to which he believes he was entitled or that he believes would have been more effective. Although he complains that he was not provided medical attention on certain days or sent to a specialist at various times, he does not reject that he was, in fact, seen on the days reflected in the medical records and sent to various specialists on the days recorded. The record is simply replete with evidence that the defendants did everything in their power to diagnose and treat the plaintiff. It is regrettable that they could not ameliorate his condition more. But, the fact that they could not solve his pain, is simply of no moment. As stated, the defendants are only liable for a constitutional deprivation if they were aware of serious medical need and were deliberately indifferent to the same. *See Estelle*, 429 U.S. at 104. The defendants' actions, in this case, were the antithesis of deliberate indifference. There is no genuine issue of fact but that they were affirmatively attentive, repeatedly.

Even if the plaintiff could offer alternative procedures or medications, it would not be sufficient. The plaintiff is simply not entitled to the treatment of his choice. See Jackson, 846 F.2d at 817, especially when there is substantial evidence that reasonable attention and treatment had already been afforded.

The plaintiff has failed to produce any evidence demonstrating that any genuine issues of fact remain for trial concerning his medical indifference claim.

**B. State Law Claims**[3]

Having dismissed the plaintiff's federal claim, the Court declines to exercise jurisdiction over the whatever state law claims the plaintiff may have against either of the defendants. *See* 28 U.S.C. § 1367(c); *see, e.g., Patterson v. City of Columbia*, 2003 WL 23901761, at *5 (D.S.C. Dec 29, 2003) ("Patterson has raised various state law claims against all Defendants. Because the federal claims must be dismissed, the court declines to exercise jurisdiction over the remaining state law claims.") Thus, the state law claims, if any, are dismissed without prejudice for refiling in state court.

## CONCLUSION

Wherefore, it is RECOMMENDED that the defendants' Motion for Summary Judgment [Doc. 10] should be GRANTED. The defendants' compliance with the Court's October 31, 2007 Order [Doc. 28] is still required.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

November 2, 2007
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

---

[3] Out of an abundance of caution, the defendants have moved for summary judgment on any claim of the plaintiff related to a failure of the defendants to classify him as a disabled inmate. The Court does not interpret the plaintiff's Complaint to contain such a claim and, to the extent it does, it has been abandoned by the plaintiff as he presents no evidence or argument regarding the same at summary judgment.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).